11-2517-ag
*Caraballo-Tavera v. Holder*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2011

(Submitted On: June 15, 2012                                   Decided: June 18, 2012)

Docket No. 11-2517-ag

_____

DIOMARES DE JESUS CARABALLO-TAVERA,

      *Petitioner*,

      v.

ERIC H. HOLDER, JR., United States Attorney General,

      *Respondent.*

_____

Before: CALABRESI, CABRANES, and LOHIER, *Circuit Judges.*

      Appeal from a June 6, 2011 decision of the Board of Immigration Appeals, affirming the June 18, 2009 decision of an Immigration Judge that denied petitioner's application for adjustment of status and ordered him removed.   Because the petitioner is ineligible to adjust his status to that of a lawful permanent resident on any basis other than marriage to his K-1 visa sponsor, we affirm.

> Howard L. Baker, Wilens & Baker, P.C., New York, NY, *for Petitioner Diomares De Jesus Caraballo-Tavera.*

> Julia J. Tyler, Trial Attorney; Tony West, Assistant Attorney General; and Shelley R. Goad, Assistant Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, DC, *for Respondent Eric H. Holder, Jr., United States Attorney General.*

1

PER CURIAM:

Diomares De Jesus Caraballo-Tavera ("Caraballo-Tavera"), a native and citizen of the Dominican Republic, petitions for review of a June 6, 2011 decision of the Board of Immigration Appeals ("BIA"), affirming the June 18, 2009 decision of an Immigration Judge ("IJ") that denied his application for adjustment of status and ordered him removed. *In re Caraballo-Tavera*, No. A073 616 278 (B.I.A. June 6, 2011), *aff'g* No. A073 616 278 (Immig. Ct. Hartford, CT June 18, 2009). We recount only such facts as are necessary to explain our decision.

Where, as here, "the BIA does not expressly 'adopt' the IJ's decision, but 'its brief opinion closely tracks the IJ's reasoning,'" we "consider both the IJ's and the BIA's opinions 'for the sake of completeness.'" *See Zaman v. Mukasey*, 514 F.3d 233, 237 (2d Cir. 2008) (quoting *Wangchuck v. DHS*, 448 F.3d 524, 528 (2d Cir. 2006)). We review the BIA's legal conclusions *de novo*, "with the caveat that the BIA's interpretations of ambiguous provisions of the [Immigration and Nationality Act] are owed substantial deference unless 'arbitrary, capricious, or manifestly contrary to the statute.'" *Mardones v. McElroy*, 197 F.3d 619, 624 (2d Cir. 1999) (quoting *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)).

## DISCUSSION

### I. Relevant Statutory Provisions

Under the Immigration and Nationality Act ("INA"), "[t]he term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws." INA § 101(a)(20), 8 U.S.C. § 1101(a)(20). Certain aliens physically present in the United States can seek lawful permanent resident ("LPR") status without having to depart the United States. Pursuant to 8 U.S.C. § 1255(a), the Attorney General, in his discretion, may accord LPR status to "an alien who

2

was inspected and admitted . . . into the United States," provided, *inter alia*, that he is "eligible to receive an immigrant visa" and "an immigrant visa is immediately available to him at the time his [adjustment of status] application is filed." INA § 245(a), 8 U.S.C. § 1255(a).

Certain classes of aliens are expressly barred from adjusting their status under 8 U.S.C. § 1255(a). One such class includes holders of nonimmigrant "K-1 visas"—individuals who are fiancé(e)s of United States citizens and "who seek[] to enter the United States solely to conclude a valid marriage with the petitioner within ninety days after admission." INA § 101(a)(15)(K), 8 U.S.C. § 1101(a)(15)(K). These individuals may adjust to LPR status only pursuant to 8 U.S.C. § 1255(d), which provides, in relevant part:

> The Attorney General may not adjust, under [8 U.S.C. § 1255(a)], the status of a nonimmigrant alien described in [8 U.S.C. § 1101(a)(15)K] except to that of an alien lawfully admitted to the United States on a conditional basis under [8 U.S.C. § 1186] as a result of the marriage of the nonimmigrant . . . to the citizen who filed the [K-1 visa petition].

As the language of the statute makes clear, K-1 visa holders can first adjust only to conditional lawful permanent resident ("CLPR") status. INA § 245(d), 8 U.S.C. § 1255(d). In order to remove the conditions on the alien spouse's permanent residency, the alien spouse and petitioning spouse jointly must submit a petition requesting the removal of the conditional designation.[1] *See* INA § 216(c)(1)(A), 8 U.S.C. § 1186a(c)(1)(A). If the alien spouse is unable to file a joint petition because, for example, the marriage has ended, he may apply for a waiver of the joint petition requirement by attesting, *inter alia*, that the marriage was entered into in good faith, but the marriage ended other than by death, and that the alien spouse was not at fault in failing to meet the joint filing requirements. *See* 8 U.S.C. § 1186a(c)(4)(B); *see also* 8 C.F.R. § 216.5(a)(ii). If the joint petition waiver is granted, the conditions on the alien's permanent

---

[1] The petition for removal of conditions "must be filed during the 90-day period before the second anniversary of the alien's obtaining the status of lawful admission for permanent residence." 8 U.S.C. § 1186a(d)(2)(A).

3

resident status are removed, and the alien becomes an LPR. *See* 8 U.S.C. § 1186a(c)(3)(B). If, however, the joint petition waiver is denied, the alien's CLPR status is terminated and he is placed in removal proceedings. *See* 8 U.S.C. § 1186a(c)(3)(C); *see also* 8 C.F.R. § 216.5(f).

## II. Caraballo-Tavera's Eligibility for Adjustment of Status

### A. Facts

Caraballo-Tavera complied with the statutory framework described above. In July 1998, he entered the United States on a K-1 visa as the fiancé of Nilsa Debora Perez ("Perez"), a United States citizen. Caraballo-Tavera and Perez were married within the 90-day period prescribed by law. 8 U.S.C. § 1184(d). In December 1999, Caraballo-Tavera adjusted his status to CLPR on the basis of his marriage to Perez. The couple divorced in March 2001. Caraballo-Tavera thereafter filed a petition to remove the conditions on his residency, seeking a waiver of the joint petition requirement on the basis that he had entered the marriage in good faith. In October 2005, the Department of Homeland Security ("DHS") denied the waiver request, finding that Caraballo-Tavera had failed to meet his burden to prove the *bona fides* of the marriage, and terminated his CLPR status. Removal proceedings commenced on March 2, 2006.

Caraballo-Tavera argued during the removal proceedings, as he does on appeal, that he is eligible to adjust to LPR status under 8 U.S.C. § 1255(a) based on an approved immigrant visa petition filed by his daughter, a United States citizen. The sole question on appeal is whether Caraballo-Tavera is eligible to adjust his status to LPR on any basis other than marriage to his K-1 visa sponsor (*i.e.*, his ex-wife). The BIA and IJ held that he is not. We affirm.

### B. Analysis

At the outset, we note that the BIA and several of our sister circuits have interpreted the language of 8 U.S.C. § 1255(d) to bar an alien admitted to the United States on a K-1 visa from obtaining LPR

4

status on any basis other than marriage to the K-1 visa sponsor. *See, e.g.*, *Birdsong v. Holder*, 641 F.3d 957, 961 (8th Cir. 2011); *Zhang v. Holder*, 375 F. App'x 879, 885 (10th Cir. 2010); *Choin v. Mukasey*, 537 F.3d 1116, 1120 n.4 (9th Cir. 2008); *Markovski v. Gonzales*, 486 F.3d 108, 111 (4th Cir. 2007); *Matter of Sesay*, 25 I&N Dec. 431, 437–38 (BIA 2011).

Caraballo-Tavera does not contest that § 1255(d) bars a "nonimmigrant alien described in [8 U.S.C. § 1101(a)(15)(K)]" from adjusting his status on any basis other than marriage to the K-1 visa sponsor. 8 U.S.C. § 1255(d). Instead, he argues that he is not subject to the restrictions set forth in § 1255(d) because he is not a "nonimmigrant alien described in [8 U.S.C. § 1101(a)(15)(K)]." In essence, Caraballo-Tavera contends that he "ceased to be a nonimmigrant" subject to § 1255(d) when he adjusted his status to CLPR in December 1999.

The Ninth Circuit confronted a similar claim in *Kalal v. Gonzales*, 402 F.3d 948 (9th Cir. 2005), in which a petitioner who did not marry her K-1 visa sponsor was granted CLPR status in error. The Ninth Circuit held that "[o]nce [Kalal's] improperly granted CLPR status was rescinded, Kalal was in the position of a K-1 visa holder who neither married her fiancé within 90 days of entry, nor departed. In short, she was removable." *Id.* at 951. The court concluded that Kalal was obligated to comply with the "specific restrictive process for holders of that kind of visa," and that § 1255(d) precluded Kalal from adjusting her status to LPR on any basis other than her marriage to the original K-1 visa sponsor. *Id.* at 951–52.

Unlike the petitioner in *Kalal*, Caraballo-Tavera complied with the initial statutory requirements by marrying his fiancée within 90 days of his arrival in the United States and adjusting to CLPR status on the basis of his marriage. But in the end, both petitioners lost their CLPR status because they failed to fully comply with the K-1 visa requirements—Kalal because she failed to marry her K-1 visa sponsor, and Caraballo-Tavera because he failed to prove the *bona fides* of his marriage. Because Caraballo-Tavera

5

failed to complete the process for K-1 visa holders to obtain full LPR status, he, like Kalal, is in the position of an "out of status" K-1 visa admittee.

It is clear from the statutory scheme set forth above that Congress has devised "a specific restrictive process" for K-1 visa holders. *Id.* at 952. As an "out of status" K-1 visa admittee who has failed to follow the required statutory process, Caraballo-Tavera remains subject to the restrictions in § 1255(d). He is therefore ineligible to adjust his status to LPR on any basis other than marriage to his K-1 visa sponsor. *See, e.g., Choin*, 537 F.3d at 1119 n.4 ("There is no question that the plain language of [§ 1255(d)] bars K visaholders from adjusting to permanent resident status on any basis other than the marriage to the citizen who petitioned on their behalf."). Accordingly, we conclude that Caraballo-Tavera's application for adjustment of status under 8 U.S.C. § 1255(a) was properly denied, since he is ineligible as a matter of law to adjust his status based on his daughter's immigrant visa petition.

This conclusion is in accord with 8 C.F.R. § 245.1(c)(6), the regulation addressing K-1 visas, which provides that "[a]ny alien *admitted* to the United States as a nonimmigrant [K-1 visa holder]" is ineligible to adjust status except to that of a CLPR on the basis of the marriage to the K-1 visa sponsor. 8 C.F.R. § 245.1(c)(6) (emphasis added). The BIA correctly determined (albeit in a non-precedential decision), and we now hold, that the plain language of 8 C.F.R. § 245.1(c)(6) clearly applies the § 1255(d) bar to an alien who was *originally admitted* to the United States on a K-1 nonimmigrant visa. *See* 8 C.F.R. § 245.1(c)(6). Because Caraballo-Tavera was originally admitted to the United States on a K-1 nonimmigrant visa, he cannot adjust his status to that of a full LPR on any basis other than marriage to his original K-1 visa sponsor.[2]

The BIA's decision in *Matter of Stockwell*, 20 I&N Dec. 309 (BIA 1991), is not to the contrary. In that case, the BIA concluded that § 1255(d) did not prohibit an alien whose CLPR status had been

---

[2] We do not, of course, suggest—much less hold—that an alien who fails to comply with the K-1 process is forever barred from seeking legal immigrant or nonimmigrant status in the United States under otherwise applicable law.

6

terminated from adjusting his status to that of LPR. *Id.* at 311–12. Caraballo-Tavera argues that § 1255(d), as interpreted by the BIA in *Matter of Stockwell*, should not bar him from adjusting his status on the basis of his daughter's approved immigrant visa petition merely because his CLPR status has been terminated. Two key distinctions undermine his reliance on the holding of *Matter of Stockwell*.

First, as the BIA noted, the alien in *Matter of Stockwell* entered the United States as a "visitor for pleasure" rather than a K-1 visa holder. Second, and more importantly, *Matter of Stockwell* was predicated on the interpretation of 8 C.F.R. § 245.1(b)(12) (1991) (now 8 C.F.R. § 245.1(c)(5)), which bars adjustment for "[a]ny alien who *is* already an alien lawfully admitted to the United States for permanent residence on a conditional basis pursuant to section 216 of the Act." *Matter of Stockwell*, 20 I&N Dec. at 311 (quoting 8 C.F.R. § 245.1(b)(12) (1991)) (emphasis added) (alteration in original). As the BIA properly noted, the regulation at issue here has no such temporal limitation. *See* 8 C.F.R. § 245.1(c)(6) (barring adjustment, except on the basis of marriage to the K-1 visa sponsor, for "[a]ny alien admitted to the United States as a nonimmigrant [K-1 visa holder]"). Based on these distinctions, we find *Matter of Stockwell* inapplicable to the facts of this case.

## CONCLUSION

For the foregoing reasons, the petition for review is **DENIED**. As we have completed our review, any stay of removal that the Court previously granted in this petition is **VACATED**, and any pending motion for a stay of removal in this petition is **DISMISSED** as moot.

7